No. 37,708

ROBERT DEAN SEIBERT, *Petitioner*, v. ROY A. FERGUSON, Sheriff of Wyandotte County, *Respondent*.

(205 P. 2d 484)

Opinion filed April 26, 1949.

*Thomas H. Finigan,* of Kansas City, argued the cause, and *Lee Vaughan,* of Kansas City, was with him on the briefs for the petitioner.

*Harold H. Harding,* county attorney, argued the cause, and *Tudor M. Nellor, J. Milton Sullivant* and *Cordell D. Meeks,* assistant county attorneys, were with him on the briefs for the respondent.

The opinion of the court was delivered by

SMITH, J.: This is an original petition for habeas corpus. The respondent filed his return, whereupon the parties stipulated that the facts as set out in the petition and the return were the actual facts. The case was submitted for final determination on the petition for a writ and the respondent's return.

Petitioner, Robert Dean Seibert, was born May 7, 1934. At the time the events with which we are interested transpired he was fourteen years of age. He was found to be a juvenile delinquent in the juvenile court of Sherman county, Kansas, on August 4, 1948, and on that date was committed to the Boys' Industrial School at Topeka, to which he was admitted August 12, 1948. He remained at

that school until October 15, 1948. On October 15, 1948, he escaped from the Boys' Industrial School and together with three other inmates rode a freight train to Kansas City, Kan.; in the railroad yards there the next morning he, together with his companions, was taken into custody by the police; they admitted they had escaped from the Boys' Industrial School the day before, whereupon the police delivered them to the custody of the probation officer of the probate court of Wyandotte county early in the morning of October 16, 1948. The probation officer advised the superintendent of the school by phone, was told that these boys had escaped, and the probation officer told the superintendent they would be held in the custody of that officer until Monday or Tuesday of the following week, when they would be returned to the school. Sometime during October 17, 1948, one Gertrude Hutchison, the matron of the detention home, where petitioner was being held, was murdered by being strangled with a scarf. On October 18 a complaint charging petitioner with the crime of murder was filed in the city court of Kansas City, Kan., by the county attorney of Wyandotte county. A warrant was duly issued for the arrest of petitioner and he was arrested. He was arraigned in the city court and ordered held without bond and at the same time an order appointing two reputable attorneys, members of the bar of Wyandotte county, were appointed by the court to defend him. He was ordered held in the custody of the jailer of Wyandotte county, Kansas, until discharged by due course of law. On October 26, his preliminary hearing was continued until November 9, 1948. On that date the judge of the city court of Kansas City, Division No. 2, ordered him held for trial for the crime charged in the warrant and complaint without bond, these orders being made after his attorneys had announced in open court they desired to waive a preliminary hearing. The commitment was thereupon issued directing the jailer of Wyandotte county jail to hold petitioner in his custody until discharged by law. On November 18 an information was filed in the district court of Wyandotte county, Kansas, charging petitioner with murder in the first degree. On November 24, the case was continued until the December, 1948, term upon request of counsel for petitioner. On December 7, 1948, the district court appointed the same two attorneys who had represented petitioner at the preliminary hearing to represent him in district court, pursuant to G. S. 1947 Supp. 62-1304. On December 18, 1948, counsel for petitioner filed a motion in the district court chal-

lenging the jurisdiction of that court to try the cause and asking the court to remand it to the juvenile court for determination. On December 30, 1948, the judge of the district court, before whom the case was pending, denied this motion and continued the case to the March, 1949, term. March 4, 1949, an amended information was filed by the county attorney of Wyandotte county, Kansas, and on March 7, 1949, the case was set for trial. The answer of respondent sets out some details as to the circumstances surrounding the murder of Gertrude Hutchison. We are not concerned with those details here since the only question with which we are concerned is the jurisdiction of the district court to try petitioner and that turns altogether upon our construction of the statutes.

Counsel for petitioner filed this petition for a writ. On account of the youth of petitioner we entertained the petition for a writ rather than permit the trial to proceed and leave the question of jurisdiction to be raised on appeal.

Counsel for petitioner argue that on account of the age of the petitioner the only tribunal before which he could be tried is the juvenile court of Wyandotte county. They base this argument upon the provisions of what is known as our juvenile court law, being G. S. 1935, 38-401 to 38-432, inc. This chapter inaugurated a new policy in Kansas as to the manner with which juvenile delinquents should be dealt. We considered the general purpose of the act in *Burris v. Board of Administration,* 156 Kan. 600, 134 P. 2d 649. There we said:

"This state has long been among the leaders in humanitarian approach to the problems of juvenile delinquents. Nor is this to say that there are not, perhaps, other forward steps which might well be taken. In 1879 the legislature provided for the erection of a 'state reform school' building (Laws 1879, ch. 170). In 1881 was enacted the first organic act relating to this 'state reform school' (Laws 1881, ch. 129). Though the name of the school was subsequently changed to 'Boys' Industrial School' fundamental provisions of the original act have been retained. The institution is fundamentally parental and educational in character. Boys are committed to it who are under sixteen years of age and who have committed offenses or found to be incorrigible (G. S. 1935, 76-2104, 76-2105). Boys so committed remain until they are twenty-one years old, unless sooner discharged as provided by statute (G. S. 1935, 76-2109). A similar institution for girls—Girls' Industrial School—was established in 1889. At these schools every characteristic of penal institutions is avoided as far as possible. There are no stout enclosures, no armed guards, no provisions for control by force. To set up those instrumentalities would destroy the very atmosphere and spirit with which the state seeks to surround the boys. Schooling, including occupational and trade courses, and other helpful training is

provided. Most of the boys prove amenable to its care and discipline and the school is justly proud of the many fine citizens who received constructive training within its walls and on its campus." (p. 604.)

The first section of the act, chapter 190, Laws 1905, now G. S. 1935, 38-401, made the judge of the probate court in each county the juvenile court judge in that county and gave him jurisdiction over all cases concerning "dependent, neglected and delinquent" children. The second section, G. S. 1935, 38-402, defined "dependent" child and "neglected" child and amongst these definitions we find it provided that the word "delinquent" child should include "any child under the age of sixteen years of age who violates any law of this state or any city, town or village ordinance." The third section, G. S. 1935, 38-403, provided for the appointment of probation officers and defined their authority. The fourth section, G. S. 1935, 38-404, provided for the filing of petitions calling the court's attention to any "delinquent" or "dependent" child. The fifth section, G. S. 1935, 38-405, provided for a hearing and for notice. The sixth section, G. S. 1935, 38-406, provided for a continuance of the hearing and for the child being held in the custody of some person other than the jailer. The seventh section, G. S. 1935, 38-407, provided for awarding the custody of the child to some reputable citizen or industrial school as provided by law. The eighth section, G. S. 1935, 38-408, provided that where the child be awarded to the care of any association or individual it should become a ward and subject to the guardianship of the association or individual. The ninth section, G. S. 1935, 38-409, provided the case might be continued from time to time and the child held in the control of the probation officer or permitted to remain at home. This section also provided in part as follows:

"Or the court may commit the child to a suitable institution for the care of delinquent children: *Provided,* That no child under the age of sixteen years shall be committed to the state reformatory, and in no case shall the child be committed beyond his or her minority."

The tenth section, G. S. 1935, 38-410, provided for the court causing a child who has been committed to an institution or individual to be brought before it from time to time. The eleventh section, G. S. 1935, 38-411, provided that when a child under the age of sixteen was arrested instead of being taken before a justice of the peace or police magistrate or judge heretofore having jurisdiction of the offense he must be taken before the juvenile court or if he has been

taken before a magistrate that magistrate must transfer the case to the juvenile court. The twelfth section, G. S. 1935, 38-412, provided for children appealing from any order of commitment to the district court. The thirteenth section, G. S. 1935, 38-413, made it the duty of the county attorneys to aid the probation officers in the performance of their duties. The fourteenth section, G. S. 1935, 38-414, as follows:

"All punishments and penalties imposed by law upon persons for the commission of offenses against the laws of the state, or imposed by city ordinances for the violation of such ordinances, in the case of delinquent children under the age of sixteen years, shall rest in the discretion of the judge of the juvenile court, and execution of any sentence may be suspended or remitted by said court."

The fifteenth section, G. S. 1935, 38-415, provided that the act should be liberally construed. The sixteenth section provided that all acts in conflict with that act or inconsistent therewith should be repealed. Petitioner pointed to the language of that chapter, especially that which has been quoted, and argues that under its provisions on account of the fact that he was only fourteen years of age when he is alleged to have murdered Mrs. Hutchison neither the city court of Kansas City, Kan., nor the district court of Wyandotte county had any jurisdiction to try him and the only tribunal which did have such jurisdiction was the juvenile court of Wyandotte county. He asks us to so hold by granting this writ. At the outset of the consideration of this argument we will take note of a provision in G. S. 1935, 38-402, being section 2 of chapter 190 of the Laws of 1905. That provision is—

"This act shall apply only to children under the age of sixteen years, not now or hereinafter inmates of any state institution or any industrial school for boys or industrial school for girls."

Counsel for respondent realizes the possible effect of this provision. They state in their brief as follows:

"It would appear from the foregoing statutes that the only tribunal to try said petitioner for said offense is the juvenile court of Wyandotte county, Kansas, unless it be held under section 38-401 of the juvenile court act that at the time of the commission of the offense he was an inmate of a state institution or industrial school for boys."

They then proceed to argue petitioner was not an inmate of the Boys' Industrial School when he is charged to have committed the crime of murder because he had escaped from that institution. They couple this with an argument based on G. S. 1935, 21-2001,

a statute that provides for trial in district court and punishment of persons confined in the State Reform School, the name once borne by the Boys' Industrial School. G. S. 1935, 21-2001, provides as follows:

"Any person confined in the state industrial school for boys or in the state industrial school for girls, who shall attempt to set fire to any building belonging to either of such institutions, or to any combustible matter for the purpose of setting fire to any such building, or who shall wilfully and forcibly resist the lawful authority of any officer of either of such institutions or shall incite or attempt to incite others to do so, or shall by gross or habitual misconduct exert a dangerous and pernicious influence over other persons confined in either of such institutions, or shall commit a felonious assault upon any officer, attendant, employee or inmate of either of such institutions, or shall in any manner wilfully burn or otherwise destroy property of the value of more than twenty dollars belonging to either of such institutions, or shall run away or escape from either of such institutions or from the lawful authorities thereof, shall be deemed guilty of a felony, and upon conviction thereof in the district court of the county wherein such offense shall have been committed shall be punished as follows: If the person so convicted is confined in the state industrial school for boys, he shall be sentenced and committed to the Kansas State Industrial Reformatory for a term of not less than one year nor more than three years; and if the person so convicted is confined in the state industrial school for girls, such person shall be sentenced and committed to the state penitentiary for a term of not less than one year nor more than three years: *Provided,* That for running away or escaping from either of such institutions the person so offending shall be deemed guilty of a violation of this act only upon the second or any subsequent offense."

The above with a change in the name of the institution is section 1 of chapter 172 of the Laws of 1901. It will be noted it provides that any person confined in either the state reform school, which is now the Boys' Industrial School, and the state industrial school for girls, should be punished by trial in the district court where the offense was committed for certain offenses, that is, setting fire to a building, resisting authority of an officer, by conduct exercising a dangerous or pernicious influence over other persons, felonious assault upon an officer, destruction of property and running away from the institution. We construed that statute in *Burris v. Board of Administration,* supra.

In that case a boy fourteen years old had been committed to the Boys' Industrial School. While there he escaped several times and while at large committed other crimes. He was finally tried and convicted of escaping, in violation of G. S. 1935, 21-2001, and sentenced to be confined at the State Reformatory at Hutchinson.

While there he filed a petition for a writ of habeas corpus alleging that under the provisions of G. S. 1935, 38-401 to 38-432, he on account of his age could not be regarded as a criminal but only as a delinquent child. He relied strongly on G. S. 1935, 38-409, where it is provided, in part, that—

"No child unaer the age of sixteen years shall be committed to the state reformatory."

We referred to the portion of G. S. 1935, 38-402, which has already been quoted in this opinion, where it is provided that—

"This act shall apply only to children under the age of sixteen years, not now or hereafter inmates of any state institution or any industrial school for boys."

We held that the section meant what it said and the petitioner had been an inmate when he escaped and the juvenile court act did not apply to him and he could be prosecuted in district court for a violation of G. S. 1935, 21-2001. In the syllabus we said:

"The classification established by section 38-402 (G. S. 1935) whereby the juvenile court act is made inapplicable to inmates of certain institutions is valid insofar, at least, as it relates to inmates of the Boys' Industrial School."

. To meet this situation petitioner argues that at the time of the commission of the offense with which he is charged he was not an inmate of the Boys' Industrial School on account of the fact that he had escaped therefrom and that he was not "confined" in the Boys' Industrial School, as contemplated by G. S. 1935, 21-2001, for the same reason—hence neither of the provisions of the above statutes, that is, G. S. 1935, 21-2001, nor the exception in G. S. 1935, 38-402, applies to him.

We find it unnecessary to decide whether petitioner at the time the crime with which he is charged was committed was "confined" in the Boys' Industrial School since he is not charged with a violation of G. S. 1935, 21-2001, but is charged with murder, as provided in the general crimes act, murder not being one of the crimes covered by G. S. 1935, 21-2001. We must, however, give attention to his argument that he was not at the time of the commission of the offense with which he was charged an "inmate" of the Boys' Industrial School. We hold by escaping from the school he did not cease to be an inmate of it. This wrongful act of escape subjected him to be punished under the provisions of G. S. 1935, 21-2001, as well as the general crimes act. Furthermore, under the terms of G. S. 1935, 76-2111, any sheriff, constable or policeman had the

power to arrest petitioner and return him to the school. As a matter of fact, upon his arrest in Kansas City the superintendent of the school had been advised of his arrest and the superintendent asked the authorities in Kansas City to hold him for the officers from the school. He was actually in the custody of the school at the time he is charged with the commission of the crime though the probation officer of Kansas City, Kan., was exercising the actual physical restraint. To hold otherwise would be to hold that when a group of these boys from the Boys' Industrial School are taken some distance from the school for the purpose of taking part in some athletic event or some other function while they are away from the grounds immediately surrounding the school they are not inmates thereof. Such was not the intention of the legislature. The general rule is stated at 18 C. J. S., p. 109, par. 9, as follows:

"The legislature has full power to pass statutes relative to the custody, care, and control of persons convicted of crime. When a convict is serving a penal sentence, he is in the custody of the state or its authorities, and he remains constructively in such custody even though he may be released on parole. . . . A person convicted of felony and sentenced to confinement in the state prison is in contemplation of law in prison until he serves his term or is pardoned, although he may have been hired out to work for a contractor for convict labor, for the state cannot surrender its police power over convicts. A prisoner who has been convicted of a crime by a federal court and is confined in a state prison, with the consent of the state is deemed to be in the custody of the federal authorities."

Once we have arrived at the conclusion that petitioner never ceased to be an inmate of the Boys' Industrial School from the time he escaped we have then only to consider the effect of the exception in G. S. 1935, 38-402. It provides, in part, that the act, that is, the juvenile court act, shall apply only to children under the age of sixteen not then or thereafter inmates of any industrial school for boys. The question is settled against the argument of the petitioner by *Burris v. Board of Administration,* supra. Up to the time of the passage of that act in 1905 boys under sixteen could be prosecuted under the provisions of G. S. 1935, 76-2104. That section was formerly section 3 of chapter 129 of the Laws of 1881. It provides, as follows:

"Whenever any boy under the age of sixteen years shall be convicted of any offense known to the laws of this state, and punishable by imprisonment, the court or justice, as the case may be, before whom such conviction shall be had, may at its discretion sentence such boy to the state industrial school for boys, or to such punishment as is now provided by law for the same offense; and if

the sentence shall be to the state industrial school for boys, then it shall be in the alternative to the state industrial school for boys, or to such punishment as would have been awarded if this act had not been passed."

It will be noted the section provides for boys under the age of sixteen and that they may be sentenced under the general crimes act or in the discretion of the court to the state industrial school for boys.

It also gave the courts before which he should be arraigned, which would include at that time the district court, the power with the consent of the accused to arrest any proceedings and commit the boy to the reform school, now the industrial school. The provision with which we are concerned is that any court before whom the boy was arraigned had the discretion to sentence the boy to be an inmate of the industrial school for boys or to the punishment provided in the general crimes act. It was a matter of discretion for the court. It was our first step in the handling of what we now term juvenile delinquents, that is, a more intelligent, enlightened method than formerly followed of sentencing boys of tender years to a penal institution.

It has been brought to our attention that G. S. 1935, 21-117, provides that when any person under the age of sixteen years shall be convicted of any felony he shall be sentenced to imprisonment in a county jail not exceeding one year instead of confinement and hard labor, as prescribed by the preceding sections of the crime act. The section has been in our statute books ever since 1868. At the time it was enacted there were only county jails and the penitentiary at Lansing. It is suggested that the section was the one the legislature had reference to in enacting G. S. 1935, 76-2104, and the district court would in this case only have authority to sentence petitioner to serve a year in the county jail of Wyandotte county for a year or to the Boys' Industrial School. We have considered this section and the other sections, to which reference is made in this opinion, and hold that G. S. 1935, 21-117, has been repealed by implication and is no longer in effect. In this connection we have considered what we held in *State v. Hewes*, 60 Kan. 765, 57 Pac. 959. If petitioner should be found guilty under the information filed against him he may be given an indeterminate sentence to the state industrial reformatory at Hutchinson, pursuant to G. S. 1935, 76-2306.

We have in 1901 the act we have just discussed providing for boys confined in the Boys' Industrial School being sentenced to the

reformatory at Hutchinson for the commission of certain offenses having to do with the institution. Then we see in 1905 the juvenile court act being passed, which has come down from that time to this, just about intact for the further intelligent handling of the affairs of juvenile delinquents, both boys and girls, with the proviso, however, that it should not apply to children who are inmates of an institution at the time they commit the crime with which they were charged.

Petitioner cites and relies on *Swehla v. Malone,* 114 Kan. 712, 220 Pac. 299; *State v. Dubray,* 121 Kan. 886, 250 Pac. 316; *State v. O'Keith,* 136 Kan. 283, 15 P. 2d 443. In all these cases we held generally that offenses committed by children under sixteen years of age were under the exclusive jurisdiction. In none of them, however, did we consider a case where the child charged with the offense was an inmate of the industrial school for boys or some other institution at the time the offense with which he was charged was committed.

The conclusion seems inescapable that the proviso was intended by the legislature to make it possible for boys or girls who had shown themselves to be so incorrigible that they violated some state statute, to be dealt with as criminals and not as mere juvenile delinquents as they had been up to the time of the commission of their crime. This must be so. The Boys' Industrial School and the industrial school for girls at Beloit are neither one of them penal institutions. The social ideas of the state have progressed from year to year in this connection. Much effort has been made to bring it about that these two schools shall be utterly devoid of the atmosphere of a penal institution. To do this there must be an absence of restraint, no walls, no high fences, no barred windows, no armed guards. The whole theme of the institution is that of education and rehabilitation. It must be so because a mere neglected child is there side by side with one who has violated a state statute, usually a minor statute, such as petit larceny or some kindred offense, but still a state statute. Now if we are going to insist that boys who once inmates there have shown themselves unfit subjects for that type of influence and treatment by committing some serious crime, such as murder, then we would utterly break down the whole philosophy of the school. For the benefit of the other inmates of these institutions that should not be the law as the legislature evidently intended.

The writ is denied.