No. 57,141

STATE OF KANSAS, *Appellant*, v. BARTON E. MEREDITH, *Appellee.*

(696 P.2d 403)

Opinion filed March 2, 1985.

*Randy Hendershot*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, *Gene M. Olander*, district attorney, and *Arthur R. Weiss*, assistant district attorney, were on the brief for the appellant.

*William E. Enright*, of Ireland and Enright, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal on a question reserved by the State in a driving under the influence (DUI) case. Barton Meredith entered a plea of no contest to his second offense of driving under the influence. He was sentenced to ninety days in jail, which was reduced to five days in jail. He was given credit on his sentence for his thirty-day in-patient treatment at Valley Hope in Atchison, a privately operated alcohol treatment center.

The sole issue on appeal is whether in-patient alcohol treatment satisfies the requirement of imprisonment found in K.S.A. 1983 Supp. 8-1567(d).

The State argues the in-patient alcohol treatment received by defendant does not satisfy the requirement of imprisonment found in K.S.A. 1983 Supp. 8-1567(d), which provides:

"On a second conviction of a violation of this section, a person shall be sentenced to not less than 90 days' nor more than one year's imprisonment and fined not less than $500 nor more than $1,000. The person convicted shall not be eligible for release on probation or suspension of sentence until the minimum sentence has been satisfied, but the sentence may be reduced, but not to less than five days' imprisonment, if the convicted person enters into and completes a treatment program for alcohol and drug abuse as provided in K.S.A. 8-1008 and amendments thereto. In addition, the court shall suspend the driver's license of the convicted person for one year or until the person completes the treatment program approved by the court, whichever is directed by the court. No plea

bargaining agreement shall be entered into nor shall any judge approve a plea bargaining agreement entered into for the purpose of permitting a person charged with a violation of this section, or any ordinance of a city in this state which prohibits the acts prohibited by this section, to avoid the mandatory penalties established by this subsection or the ordinance."

This case, therefore, requires the court to construe this statute. The fundamental rule of statutory construction, to which all others are subordinate, is the intent of the legislature governs when that intent can be ascertained from the statute. *Kansas State Board of Healing Arts v. Dickerson*, 229 Kan. 627, 629 P.2d 187 (1981).

The State argues the legislative intent is clearly to require imprisonment in jail and in no other facility. For support the State cites the language as it was introduced to the legislature and compares it to the statute as finally passed. The bill when introduced stated:

"The person convicted shall not be eligible for release on probation or suspension of sentence, but the sentence may be reduced, but not to less than five days' imprisonment, if the convicted person enters into and completes a treatment program for alcoholism or drug abuse . . . ." S.B. 699 (February 10, 1982).

The bill as passed stated:

"The person convicted shall not be eligible for release on probation or suspension of sentence *until the minimum sentence has been satisfied,* but the sentence may be reduced, but not to less than five days' imprisonment, if the convicted person enters into and completes a treatment program for alcohol and drug abuse . . . ." (Emphasis supplied.) L. 1982, ch. 144, § 5.

Appellee argues the intent of the legislature was to remove from the highways of this state those persons who abuse alcohol and drive. The proper method, appellee asserts, to accomplish this, is to treat the cause, and not punish the effect. Appellee further argues by imposing a thirty-day alcohol treatment program, rather than a five-day prison sentence and some other treatment program, the judge was properly attempting to treat the cause of the problem and thereby rid the State of Kansas of the effect.

The State cites *State v. Babcock,* 226 Kan. 356, 597 P.2d 1117 (1979), for authority that imprisonment, when stated in a statute, requires actual jail time. In *Babcock,* the defendant was convicted of burglary and sentenced to one to ten years. His sen-

tence was suspended and he was placed on probation requiring him to stay at a halfway house. His probation was later revoked and the original sentence reinstated with the defendant given credit for the time spent in custody. The trial court ordered the defendant be given credit for the time spent in the halfway house. This court reversed, stating that when determining whether jail credit is to be granted, the crucial question is whether the person is in custody. One factor utilitized by the court in *Babcock* in determining whether the defendant was in custody in the halfway house was whether he was subject to the control of the courts, correction officers or law enforcement officials. Since Babcock was in the halfway house under the control of a probation officer, he was not under the actual or constructive control of jail officials, and hence could not be given credit for his time spent in the halfway house.

Appellee cites *State v. Pritchett*, 222 Kan. 719, 567 P.2d 886 (1977). In *Pritchett* this court upheld a conviction of aggravated juvenile delinquency when the defendant escaped from a Topeka hospital where he had been taken for treatment by officials of the training facility where he was imprisoned. The defendant argued the hospital was not the facility to which he had been sentenced, hence his escape was not illegal. In finding the juvenile's custody in the hospital the same as his custody in the juvenile home, the court held:

"The common thread which runs through these cases is the idea that custody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained. [Citation omitted.] There is no requirement that the prisoner be constantly supervised or watched over by prison officials. [Citation omitted.] The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way." 222 Kan. at 720.

*Pritchett* is clearly distinguishable from *Babcock*. In *Pritchett* the individual in the hospital continued to be under the custody and control of the prison officials. In *Babcock*, the prisoner was on probation, no longer subject to the control of prison officials. He was free and subject only to supervision by his probation officer. There was an intent on the part of prison officials to "give up their prisoner," while in *Pritchett*, there was no such intent.

The statute here plainly and clearly requires on a second

offense of DUI the offender must spend at least five days in custody of law enforcement officials. Time spent in an alcohol treatment center where an individual is not under the custody and control of law enforcement officials, is no substitute for that minimum imprisonment.

The judgment of the trial court is reversed and the case remanded for sentencing consistent with this opinion.